## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## WICHITA FALLS DIVISION

| | | |
|---|---|---|
| **CLIFTON DEWAYNE HARVIN,** | § | |
| **TDCJ No. 01235629,** | § | |
| | § | |
| **Petitioner,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 7:17-cv-00003-M-BP** |
| | § | |
| **LORIE DAVIS, Director,** | § | |
| **Texas Department of Criminal Justice,** | § | |
| **Correctional Institutions Division,** | § | |
| | § | |
| **Respondent.** | § | |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

Before the Court is a Petition for Writ of Habeas Corpus filed by Petitioner Clifton Dewayne Harvin pursuant to 28 U.S.C. § 2254. ECF No. 1. On June 29, 2017, the undersigned entered Findings, Conclusions, and Recommendation (ECF No. 29) recommending dismissal of claims 1–5 and 13–16 of the Petition, which Chief United States District Judge Barbara M.G. Lynn accepted by Order entered on August 2, 2017 (ECF No. 31). After considering the remaining claims alleged in the Petition, claims 6–12 and 17, the other pleadings on file, and the applicable law, the undersigned **RECOMMENDS** that Chief Judge Lynn **DENY** the remaining claims.

## Procedural Background

This case involves a Petition for Writ of Habeas Corpus filed by Clifton Dewayne Harvin ("Harvin"), an inmate confined in the James V. Allred Unit of the Texas Department of Criminal Justice in Iowa Park, Texas. ECF No. 1. Harvin challenges the validity of his state conviction for aggravated sexual assault of a child, his then-six-year-old daughter. *Id.* at 2. Harvin seeks federal

habeas relief based on due process violations, ineffective assistance of trial and appellate counsel, actual innocence, and prosecutorial misconduct. *Id.* at 7–26.

On April 16, 1996, Harvin pleaded nolo contendere to the charge of aggravated sexual assault in exchange for an order deferring adjudication and placing him on community supervision for ten years. ECF No. 17 at 2. Harvin did not appeal the judgment. *Id.* at 7. In 2004, the State filed a motion to adjudicate based upon alleged violations of the terms of his community supervision probation. *Id.* at 3. Harvin was adjudicated guilty on April 14, 2004, and sentenced to sixty years in prison under Texas Penal Code § 12.32, in which a first-degree felony offense is punishable by a term of imprisonment between five and ninety-nine years. ECF No. 37 at 11. Harvin filed a direct appeal, and the Texas Court of Criminal Appeals ("TCCA") affirmed the trial court's decision on September 29, 2005. ECF No. 1 at 3.

Harvin then filed a state habeas application on May 25, 2009, which was granted on May 15, 2013. ECF No. 17-4 at 1; ECF No. 17-6 at 6; *Ex parte Harvin*, No. AP-76914, 2013 WL 2112366 (Tex. Crim. App. May 15, 2013). The TCCA held the case in abeyance and remanded to the trial court for findings of fact and conclusions of law. *Ex Parte Harvin*, No. WR-72,328-01, 2009 Tex. Crim. App. Unpub. LEXIS 736 (Tex. Crim. App. Nov. 4, 2009). The TCCA then ordered the trial court to hold a live evidentiary hearing to make further findings of fact and conclusions of law specifically concerning Harvin's ineffective of assistance counsel claims. *Ex Parte Harvin*, No. WR-72,328-01, 2010 Tex. Crim. App. Unpub. LEXIS 404 (Tex. Crim. App. June 30, 2010). Thereafter, the TCCA remanded the case to the trial court to make additional findings of fact and conclusions of law. *Ex Parte Harvin*, No. WR–72,328–01, 2011 WL 2368960, 2011 Tex. Crim. Unpub. LEXIS 408 (Tex. Crim. App. June 8, 2011). The TCCA granted Harvin

2

leave to file an out-of-time petition for discretionary review ("PDR") challenging his adjudication of guilt proceedings. *Ex parte Harvin,* No. AP–76914, 2013 WL 2112366 (Tex. Crim. App. May 15, 2013); ECF Nos. 1 at 3 and 17-4 at 5. The Court refused the PDR on October 30, 2013. *Harvin v. State*, No. PD-0634-13, 2013 WL 5872844 (Tex. Crim. App. Oct. 30, 2013).

On July 3, 2014, Harvin filed a second state habeas application. ECF No. 17-1 at 23. The TCCA denied this application on September 21, 2016. ECF No. 1 at 3-4; *Ex parte Harvin*, No. WR-72,328-03, 2016 WL 5400892 (Tex. Crim. App. Sept. 21, 2016). Harvin then filed a motion for rehearing, which was dismissed as untimely on October 21, 2016. ECF No. 1 at 4. Harvin filed the instant petition, through a third party, on January 13, 2017. *Id.* at 33.

Pursuant to this Court's Order (ECF No. 8), the State filed a preliminary response arguing that all of Harvin's claims relating to his plea of nolo contendere, claims 1–5 and 13–16, were barred by the one-year statute of limitations. ECF No. 17. Harvin filed a reply, arguing that his claims were not time-barred. ECF No. 24. As noted above, the undersigned entered Findings, Conclusions, and Recommendation (ECF No. 29) recommending that Chief Judge Lynn dismiss with prejudice claims 1–5 and 13–16, which Chief Judge Lynn accepted on August 2, 2017 (ECF No. 31).

On October 6, 2017, the State responded to Harvin's remaining claims for habeas relief. ECF No. 37. Harvin filed his reply on November 6, 2017. ECF No. 41. In his remaining claims, Harvin asserts ineffective assistance of counsel claims against his trial counsel for actions and inactions during the adjudication of guilt and punishment phases of his probation revocation proceedings ("the revocation proceedings") (claims 6–7 and 10–12) and for failing to file a motion to recuse Judge Towery, the presiding state district judge, prior to the revocation proceedings

3

(claims 8–9). ECF Nos. 1, 4, 37, and 41. He also alleges ineffective assistance of his appellate counsel (claim 17). *Id.*

## **Factual Background**

Harvin was charged with aggravated sexual assault of a child. ECF No. 1. He pleaded nolo contendere, arguing that he had not committed the crime and that his daughter had recanted the allegation. ECF No. 4 at 21–22. Pursuant to a plea bargain, the trial court placed him on deferred adjudication community supervision for a period of ten years. *Ex parte Harvin*, No. WR-72,328-03, 2016 WL 5400892 (Tex. Crim. App. Sept. 21, 2016).

The facts and procedural history of the case, as summarized by the TCCA, are as follows:

[Harvin] was arrested for aggravated sexual assault on December 20, [1994]. He posted bond on January 3, 1995. The next day, Barbara [his wife] reported that [Harvin] had taken physical custody of [their daughter and son] . . . . Judge Towery ordered that the children be removed from [Harvin]'s custody. While Harvin had custody of his children on January 4, he took his daughter to Calvary Baptist Church, where, while she sat on his lap, he obtained a tape-recorded statement from the child in the presence of the church pastor and the pastor's wife [recanting her allegations against Harvin].

On March 17, 1995, [Harvin] went to the Grayson County Sheriff's Office to take a polygraph examination, to be conducted by Grayson County Sheriff Jack Driscoll. Law enforcement was under the impression that [Harvin's] attorney was Jack McGaughey and that he had agreed to allow [Harvin] to take the examination. [Harvin] waived his rights, and Sheriff Driscoll explained the testing process to him and discussed the questions that would be asked . . . . [Harvin] and Sheriff Driscoll continued to discuss what questions [Harvin] was comfortable answering, and it became clear that [Harvin] was comfortable only with qualifying questions . . . . Sheriff Driscoll then told [Harvin] that he would not conduct the test.

[Harvin] subsequently hired attorney Patrick Morris, who communicated with District Attorney Tim Cole about the case. Morris told Cole that his client would agree to plead nolo contendere in exchange for ten years' probation. In a January 23, 1996 letter to Barbara, Cole explained that he was "inclined to accept this offer because the fact that [his daughter] had recanted on one occasion will make this

case difficult." He further explained that the recantation "gave the Grand Jury considerable trouble as it considered the case" and he believed that "any other jury will have the same reaction." He said one advantage of the proposed plea deal would be that Barbara's daughter "would not be required to endure the trauma of the public trial." Cole also assured Barbara that [Harvin]'s behavior "would be strictly controlled on probation" and that any violation would subject [Harvin] to revocation and a prison term that might exceed the period a jury might assess. The District Attorney closed the letter by asking Barbara to contact him with her thoughts.

On April 16, 1996, [Harvin] pled nolo contendere to aggravated sexual assault in exchange for ten years on deferred adjudication. His signature appears in numerous places on the plea papers, in sections entitled "waiver of jury," "waiver of rights," "waiver of 10 days preparation and approval of counsel," "present competency," and "voluntariness of plea." The "voluntariness of plea" section includes the following language: "I herein state that my plea is freely and voluntarily made, that my plea is not made as a result of any threats, that my plea is not made out of fear, that my plea is not made because of any delusive hope of pardon or parole or because of any promises made by anyone."

At the plea hearing, Cole represented the State, Morris represented [Harvin], and Judge Towery presided as the trial judge. The parties entered into a stipulation that [his daughter], if called as a witness, would testify that [Harvin] did intentionally and knowingly [sexually assault her]. The State offered the plea papers, the stipulation, and Barbara's April 3 statement into evidence. The trial court questioned [Harvin] about the plea papers and explained various rights that [Harvin] was giving up. [Harvin] agreed that he had signed the plea papers freely and voluntarily, that he wished to waive various rights, and that he read the various documents and discussed them with his attorney. [Harvin] was also informed of, and expressed his understanding of, consequences that attach specifically to deferred adjudication, and he expressed his understanding of the requirement to register as a sex offender . . . .

In the two years that followed the plea, [Harvin] filed motions to terminate his deferred adjudication early, claiming actual innocence. On these motions, the State was represented by Barry Retherford, [Harvin] was represented by attorney William Walsh, and Judge Towery presided as the trial judge. Over the course of several hearings, the trial court admitted three polygraph examinations that [Harvin] had passed. At the last hearing, held in October 1998, the trial court said that it was "not inclined to terminate [probation] at this time" but would take the matter "under advisement . . . ."

In September 2003, the State filed a motion to revoke [Harvin]'s deferred adjudication on the basis of events occurring earlier that year. In the revocation proceedings, the State was represented by McGaughey (then an assistant district attorney in Cole's office), [Harvin] was represented by Walsh, and Judge Towery presided as the trial court. At the revocation hearing, [Harvin] testified that he went to see McGaughey in 1995 to obtain his representation at the Grayson County polygraph test.

Several times at the hearing, Walsh accused the State of not giving him access, or timely access, to materials in its file, despite nominally having an open file policy. On one of those occasions, Walsh complained about not being given lab results. McGaughey had three responses. First, McGaughey maintained that the materials in the State's file had always been available for inspection by the defense. Second, he stated that, if the defense had an issue, it should have filed a motion for discovery. And third, McGaughey said that the particular item that Walsh had sought was the "original report on the original underlying case" and it "was a mystery to us as to why it would be sought." Walsh then accused McGaughey of turning over one item and saying, "You're not getting anything else." McGaughey denied the allegation. The trial court then asked, "Do you have an extra copy of the report now?" When McGaughey answered affirmatively, the trial court asked if he could give that copy to Walsh. Walsh then stated, "The Court should take note that Mr. McGaughey threw it on the ground at me." McGaughey responded, "That's a lie." The trial court responded, "Actually, Mr. McGaughey put it over there. It slid off the desk, Mr. Walsh. Now sit down."

After hearing evidence with respect to the allegations in the motion to revoke, the trial court found that [Harvin] had violated the conditions of his probation by possessing controlled substances, associating with a person involved with drugs, and refusing to submit a urine sample. Defense counsel said he did not have witnesses ready for a punishment hearing and asked for a continuance. The trial judge granted the continuance and ordered the preparation of a presentence investigation report (PSI). At the punishment hearing, defense counsel said that he had no objection to the PSI, and it was admitted. Despite the earlier representation that he needed a continuance to get defense witnesses, defense counsel produced no witnesses at the punishment hearing. Instead, defense counsel made arguments to the court that attacked the original plea of nolo contendere. The trial court revoked [Harvin]'s deferred adjudication and sentenced him to sixty years in prison.

*Ex parte Harvin*, No. WR-72,328-03, 2016 WL 5400892 (Tex. Crim. App. Sept. 21, 2016). When

ruling on a petition for a writ of habeas corpus, the Court must defer to the factual findings of state

trial and habeas courts. *Moody v. Quarterman*, 476 F.3d 260, 267–68 (5th Cir. 2007); *Young v. Dretke*, 356 F.3d 616, 629 (5th Cir. 2004). Federal courts are limited to the record before the state courts. *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). The Court reviews "only the ultimate legal determination by the state court—not every link in its reasoning." *Trottie v. Stephens*, 720 F.3d 231, 241 (5th Cir. 2013) (citing *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002) (en banc); *Catalan v. Cockrell*, 315 F.3d 491, 493 (5th Cir. 2002)).

## Legal Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") provides in pertinent part that:

> (d)     An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C.A. § 2254(d) (West 2016).

Under the "contrary to" clause, a federal court may grant a writ of habeas corpus if the state court either arrived at a conclusion opposite to that reached by the United States Supreme Court on a question of law or decided a case differently from the United States Supreme Court on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000); *Chambers v. Johnson*, 218 F.3d 360, 363 (5th Cir. 2000). Under the "unreasonable application" clause, a federal court may grant a writ of habeas corpus if the state court either unreasonably applied the correct legal rule to the facts of a particular case or unreasonably extended a legal principle from

Supreme Court precedent to a new context where it should not have applied or unreasonably refused to extend that principle to a new context where it should have applied. *Williams*, 529 U.S. at 407. The standard for determining whether a state court's application was unreasonable is an objective one and applies to all federal habeas corpus petitions that, like the instant case, were filed after April 24, 1996, provided that they were adjudicated on the merits in state court. *Lindh v. Murphy*, 521 U.S. 320, 326 (1997). In the context of habeas corpus, "adjudicated on the merits" is a term of art referring to a state court's disposition of a case on substantive rather than procedural grounds. *Green v. Johnson*, 116 F.3d 1115, 1121 (5th Cir. 1997).

Upon a finding of state court compliance with the "contrary to" clause of 28 U.S.C. § 2254(d)(1), federal courts give deference to the state court's findings unless such findings violate the "unreasonable application" clause of 28 U.S.C. § 2254(d)(2). *Chambers*, 218 F.3d at 363. The "unreasonable application" clause concerns only questions of fact. *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000). The resolution of factual issues by the state court is presumed to be correct and will not be disturbed unless the petitioner rebuts the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Sumner v. Mata*, 449 U.S. 539, 550 (1981). Absent such evidence, the presumption of correctness is applied provided that the state court findings are evidenced in writing, issued after a hearing on the merits, and are fairly supported by the record. 28 U.S.C. § 2254(d); *Burden v. Zant*, 498 U.S. 433, 436–37 (1991); *Williams v. Scott*, 35 F.3d 159, 161 (5th Cir. 1994).

### Ineffective Assistance of Trial Counsel

Harvin claims that his counsel during the revocation proceedings was ineffective because he failed to (1) move to disqualify Jack McGaughey ("McGaughey"); (2) move to recuse Judge

Towery; (3) file a motion for discovery after being denied discovery through the prosecutor's open file policy and by letter; (4) file other discovery motions; and (5) present a competent defense. ECF No. 37.

The Sixth Amendment of the United States Constitution guarantees a criminal defendant "reasonably effective assistance" of counsel. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To obtain habeas relief on a claim of ineffective assistance of counsel, the petitioner must prove (1) that his counsel's performance was deficient and (2) that it prejudiced him. *Id.* To satisfy the first prong of *Strickland*, a petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness." *Id.* A court's review of counsel's performance must be "highly deferential" and must make every effort "to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. To prove prejudice under the second prong, a petitioner must demonstrate a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* Moreover, a reasonable probability "requires a 'substantial,' not just 'conceivable,' likelihood of a different result." *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011) (quoting *Harrington v. Richtner*, 562 U.S. 86 (2011).

"A trial court's credibility determinations made on the basis of conflicting evidence are entitled to a strong presumption of correctness and are 'virtually unreviewable' by the federal courts." *Pippin v. Dretke*, 434 F.3d 782, 792 (5th Cir. 2005) (quoting *Moore v. Johnson*, 194 F.3d 586, 605 (5th Cir. 1999)). Furthermore, the resolution of factual issues by the state court is afforded

a presumption of correctness and will not be disturbed unless the habeas petitioner rebuts the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

**Ineffective Assistance of Trial Counsel Claims 6–7**

Harvin claims that his counsel rendered ineffective assistance because he failed to move to disqualify McGaughey. ECF Nos. 1 at 15; 4 at 58–60. Harvin retained McGaughey around May 1995 to represent him at a polygraph examination that was arranged by the Grayson County Sheriff's Office after Harvin was charged with aggravated sexual assault. *Ex parte Harvin*, 500 S.W.3d 418 (Tex. Crim. App. 2016) (Meyers, J., dissenting). The state habeas proceedings indicate that McGaughey did not accompany Harvin to the Sheriff's office, and the polygraph examination was never conducted. *Id.* According to Harvin, he discussed all facts of the offense charged with McGaughey and paid him a fee of $150 for purposes of representing him at the polygraph examination. *Ex parte Harvin*, No. WR-72,328-03, 2016 WL 5400892 (Tex. Crim. App. Sept. 21, 2016). McGaughey testified that he indeed met with Harvin to discuss potential representation and fees, but he had no record of receiving any money from Harvin. *Id.*

On April 16, 1996, represented by other counsel, Harvin pleaded nolo contendere to aggravated sexual assault in exchange for ten years on deferred adjudication. *Id.* In September 2003, the State filed a motion to revoke Harvin's deferred adjudication. *Id.* By then, McGaughey was an assistant district attorney, and he represented the State in the revocation proceedings. The TCCA found that the type of contacts between Harvin and McGaughey in 1995 did not establish an attorney-client relationship, and thus a conflict of interest analysis did not need to be addressed. *Ex parte Harvin*, No. WR-72,328-03, 2016 WL 5400892 (Tex. Crim. App. Sept. 21, 2016).

"[T]he Sixth Amendment guarantees the defendant the right to be represented by an otherwise qualified attorney whom that defendant can afford to hire, or who is willing to represent the defendant even though he is without funds. But the Sixth Amendment also guarantees representation that is free from conflicts of interest." *United States v. Sanchez Guerrero*, 546 F.3d 328, 332 (5th Cir. 2008) (citations and internal quotation marks omitted). "'A conflict exists when defense counsel places himself in a position conducive to divided loyalties.'" *United States v. Garcia-Jasso*, 472 F.3d 239, 243 (5th Cir. 2006) (quoting *United States v. Carpenter*, 769 F.2d 258, 263 (5th Cir. 1985)). That is, "[a]s a general rule, a conflict exists when defense counsel allows a situation to arise that tempts a division in counsel's loyalties." *United States v. Hernandez*, 690 F.3d 613, 618 (5th Cir. 2012) (internal quotation marks omitted). "[A]n 'actual conflict' . . . is a conflict of interest that adversely affects counsel's performance." *United States v. Preston*, 659 Fed. App'x 169, 2016 WL 4245450, at *7 (5th Cir. Aug. 10, 2016) (citation and internal quotation marks omitted). "An attorney's performance [is] adversely affected by a conflict of interest where counsel could [pursue] a plausible alternative defense strategy or tactic but [chooses] not to do so because of the conflict." *United States v. Apodaca*, 603 Fed. App'x 303, 304 (5th Cir. 2015) (citation omitted).

The Fifth Circuit has "held that the cross-examination of a current or former client can be a conflict of interest." *United States v. Jackson*, 805 F.3d 200, 202 (5th Cir. 2015). In an unpublished opinion it likewise has found no conflict of interest when a defendant's former lawyer subsequently represented a co-conspirator who testified against the defendant at trial. *United States v. Gutierrez*, 548 Fed. App'x 181, 183 (5th Cir. 2013) (per curiam)). There is no binding authority in this circuit on the issue of what circumstances of prior representation require a prosecutor's

11

disqualification in a matter involving a former client. Other courts outside of this jurisdiction have considered related issues. Disqualification is not required if the prior representation "involved a perfunctory matter, such as a motion hearing, in which the prosecutor did not actually receive privileged information." *Reaves v. State*, 574 So.2d 105, 107 (Fla. 1991); *but see Curry v. McNeil*, 2008 WL 5157516 (N.D. Fla. 2008) (granting a motion to disqualify a prosecutor who previously defended the defendant in a criminal matter that involved or likely involved confidential communications with the same client due to attorney-client privilege). Courts look to the circumstances surrounding the prior representation to determine whether disqualification is required. *See Avery v. State*, 217 S.W.3d 162, 171 (Ark. App. 2005) (finding that counsel's involvement in the defendant's prosecution was not improper because it did not involve the use of confidential information and was not "the same or substantially related matter" as the prior representation).

Here, Harvin argues that McGaughey represented him in his underlying aggravated sexual assault case in 1995. ECF No. 1 at 15. However, upon review of the record, it is clear that Harvin consulted various attorneys in seeking representation in the underlying case. Specifically, at Harvin's August 28, 1995, hearing on request for counsel, he stated, "I've talked to Brian Powers, Cletus Schenk, I have a couple of contracts here that I've drawn up or they've drawn up showing the retainer fee and the attorney fees for this case. I've talked to Cletus Schenk, Wichita Falls, Brian Powers here in Bowie, Jack McGaughey here in Bowie, or Montague, Nocona." ECF No. 20-6 at 5.

Harvin summarily argues that his previous contacts with McGaughey created a conflict of interest that his trial counsel should have pursued in the revocation proceedings. Harvin does not

describe the extent of any prior conversations that he had with McGaughey, the scope of any confidential information he disclosed to him, or any actions that McGaughey took in the revocation proceedings that relied on confidential or privileged information that Harvin had communicated to him previously. Instead, it appears from the record that McGaughey did not represent Harvin in the underlying criminal proceeding other than to consult with him about the planned polygraph examination that did not take place. Judge Meyers of the TCCA stated that Harvin listed McGaughey as his attorney in a Sheriff's report from 1995 concerning a polygraph test that was scheduled for Harvin. *Ex parte Harvin*, 500 S.W.3d 418, 423 (Tex. Crim. App. 2016) (Meyers, J., dissenting). However, as discussed above, Harvin apparently met with McGaughey solely for the purpose of the polygraph examination. *Id.* The record reflects no other contacts between Harvin and McGaughey until the revocation proceedings eight years later.

Moreover, though Harvin speculates that he was denied due process due to this alleged conflict of interest, he does not explain how McGaughey's alleged conflict of interest actually adversely affected the outcome of the revocation proceedings. Based on these facts, Harvin has not shown that his contact with McGaughey in 1995 created a conflict of interest eight years later during his revocation proceedings. He describes no confidential information that was shared in 1995 that would disqualify McGaughey in the later revocation proceedings. Harvin fails to assert how he was prejudiced in the revocation proceedings by McGaughey's appearance as the prosecutor. Accordingly, a motion to disqualify McGaughey would have been futile had it been filed in the revocation proceedings. "[C]ounsel is not required to make futile motions or objections." *See Roberts v. Thaler*, 681 F.3d 597, 611 (5th Cir. 2012); *Murray v. Maggio*, 736 F.2d 279, 283 (5th Cir. 1984). "Failure to raise meritless objections is not ineffective lawyering; it is

the very opposite. *Clark v. Collins*, 19 F.3d 959, 966 (5th Cir. 1994). Thus, Harvin's ineffective assistance of counsel arguments in claims 6 and 7 are without merit.

## Ineffective Assistance of Trial Counsel Claims 8–9

In claims 8 and 9, Harvin argues that his attorney's failure to move to recuse Judge Towery prior to the revocation proceedings violated his Sixth Amendment right to effective assistance of counsel. ECF No. 1. A criminal defendant has the right to a fair and impartial tribunal under the Due Process Clause. *Richardson v. Quarterman*, 537 F.3d 466, 474 (5th Cir. 2008) (citing *Bracy v. Gramley*, 520 U.S. 899 (1997)). A defendant is entitled to a fair trial before a judge with no actual bias against the defendant or interest in the outcome of the particular case. *Id.* Judicial bias is not easily established, and courts presume that a judge has properly discharged official duties. *Id.* General allegations of judicial bias are insufficient to establish a constitutional violation. *Id.* "[M]ost matters relating to judicial disqualification [do] not rise to a constitutional level." *Id.* (quoting *Aetna Life Ins. Co. v. Lavoie*, 475 U.S. 813, 820 (1986)).

Harvin contends that Judge Towery was biased because he denied him appointment of counsel, entered into and modified the plea bargain, and erroneously concurred with Harvin's trial counsel, Morris, regarding his plea. ECF Nos. 17 at 17–20 and 41 at 19–25; *Ex parte Harvin*, No. WR-72,328-03, 2016 WL 5400892 (Tex. Crim. App. Sept. 21, 2016). Furthermore, Harvin argues that Judge Towery was biased in "overruling defense objections, for ignoring McGaughey's act of throwing evidence on the floor, for falsely stating that McGaughey put the evidence on a desk and that it slid onto the floor, for ignoring false statements by the prosecutor regarding whether the defense had attempted to discover evidence through the State's open file policy, and for refusing to consider evidence of innocence after ordering the State to disclose this evidence." *Ex parte*

14

*Harvin*, No. WR-72,328-03, 2016 WL 5400892 (Tex. Crim. App. Sept. 21, 2016). According to Harvin, Judge Towery's actions in his criminal proceedings evidence judicial bias. ECF No. 41 at 19–25. Harvin disagreed with Judge Towery's rulings, but he has failed to show any personal bias or prejudice on Judge Towery's part that would mandate recusal.

The undersigned does find it necessary to address Judge Towery's voluntary recusal in 2009 and whether such recusal is evidence of judicial bias or prejudice, as Harvin argues. On October 1, 2009, Judge Towery issued an Order of Recusal stating that he had recused himself in the proceeding. ECF No. 22-19 at 14. Harvin contends that Judge Towery's voluntary recusal "must be considered" as evidence of bias and prejudice. ECF No. 41 at 23. However, a judge's voluntary recusal from a case does not prove judicial bias or prejudice. *See United States v. Couch*, 896 F.2d 78, 81–82 and n.6 (5th Cir. 1990) (finding that recusal is simply a remedy to eliminate any question of bias and impropriety); *Nat'l Ass'n for the Advancement of Multijurisdictional Practice v. Roberts*, No. 13-01963 (TFH), 2014 WL 579041 (D.D.C. Nov. 7, 2014) (finding that "voluntary recusal will preserve the appearance of an unbiased administration of justice," which the judge in the case "noted was the 'guiding consideration' even when the administration of justice is disinterested in fact.").

Harvin argues that Judge Towery's recusal soon after Harvin filed a petition for a writ of mandamus proves that "any fair-minded and reasonable person" would question Judge Towery's impartiality. ECF No. 41 at 20. The issue here is whether there was an appearance of impropriety that rose to the level of a fundamental defect resulting in a complete miscarriage of justice. *Couch*, 896 F.2d at 81–82 and n.6. The courts have found constitutionally intolerable bias only in extreme cases. *Aetna Life Ins. Co.*, 475 U.S. at 821, 825–26 (finding that for the requisite "extreme case,"

a party must show a judge has a "direct, personal, substantial, pecuniary interest in reaching a conclusion against him in his case."). Harvin has not presented any evidence of Judge Towery's direct, personal, or substantial bias, and certainly not an extreme case where there was a probability of bias that was so high that it was constitutionally intolerable. Judge Towery's voluntary recusal from the case is no evidence of impropriety, bias, or prejudice.

Based on the record before the Court, there was no factual or legal basis on which Harvin's counsel could have sought Judge Towery's recusal. Failure to make a futile motion or objection does not cause counsel's performance to fall below an objective level of reasonableness. *Johnson v. Cockrell*, 306 F.3d 249, 255 (5th Cir. 2002); *United States v. Preston*, 209 F.3d 783, 785 (5th Cir. 2000). Harvin has failed to establish the first prong of *Strickland.* Moreover, because any recusal motion would have been futile, he cannot demonstrate that his counsel's failure to move for Judge Towery's recusal caused him any prejudice. Accordingly, Harvin has failed to establish the second prong of *Strickland.* Habeas relief is therefore not warranted on these grounds.

## Ineffective Assistance of Trial Counsel Claims 10–12

In claims 10–12, Harvin argues that his counsel was ineffective for not filing discovery motions after being denied evidence by the State and for not presenting any evidence or witnesses during the punishment phase of the revocation proceedings. ECF No. 1 at 19–20. As to claim 10, Harvin argues that his counsel failed to file any discovery motions after being denied discovery multiple times even after being met with "antagonistic and nasty" responses from the State when trying to obtain evidence to use in the revocation proceedings. ECF No. 41 at 27. Harvin contends that any reasonable attorney would have filed a discovery motion following such response from the State. These assertions are conclusory in nature. *See Ross v. Estelle*, 694 F.2d 1008, 1012 (5th

16

Cir. 1983) (holding that a petitioner's claim that his trial counsel rendered ineffective assistance because he failed to investigate and interview key witnesses were "mere conclusory allegations" that did not raise a constitutional issue in a habeas proceeding). Even assuming, *arguendo*, that Harvin meets the first prong of the *Strickland* standard, he does not show that any errors on the part of counsel prejudiced the outcome of the case. To show prejudice, Harvin must show a "substantial" likelihood that the result would have been different. Harvin has made no such showing, and he thus fails to meet his burden on this claim. *See Cullen*, 563 U.S. at 189.

With respect to claim 11, Harvin contends that his counsel was ineffective by failing to file discovery motions before the punishment phase of the revocation proceedings when the State had denied all requested evidence up until that point. ECF No. 4 at 64–65. The TCCA found that McGaughey had stated on the record that no discovery motions had been filed after Harvin's attorney was denied all evidence at the prior proceedings. *Ex parte Harvin*, No. WR-72,328-03, 2016 WL 5400892 (Tex. Crim. App. Sept. 21, 2016). A failure by counsel to file motions does not *per se* constitute ineffective assistance of counsel. *Kimmelman v. Morrison*, 477 U.S. 365, 383–84 (1986). Similar to Harvin's claim 10, claim 11 also fails to meet the *Strickland* standard. Harvin has not indicated how his counsel's performance reached a level of constitutional deficiency, and he has not shown that such potential error could have prejudiced the outcome of the case. Harvin has not shown, or even alleged, how filing any discovery motion would have resulted in a different sentence in the punishment hearing. Such conclusory allegations cannot serve as a basis for a claim of ineffective assistance of counsel in a habeas proceeding. *United States v. Daniels*, 12 F. Supp. 2d 568, 575 (N.D. Tex. 1998).

In claim 12, Harvin contends that his counsel failed to "present a defense at punishment and that the type of strategy employed by Walsh at punishment is strict evidence of conduct so unreasonable that no competent and reasonable attorney would have engaged in it." ECF No. 41 at 30. According to Harvin, his counsel's strategy to attack the underlying plea instead of obtaining discovery proves constitutionally deficient performance. *Id.* As the TCCA summarized, Harvin "faults Walsh for failing to file a discovery motion in time for the sentencing hearing despite McGaughey's suggestion at the adjudication hearing that a [discovery motion] was appropriate . . . . [Harvin] faults Walsh for not presenting any witnesses or evidence at the punishment hearing except to attack the underlying plea of nolo contendere." *Ex parte Harvin*, No. WR-72,328-03, 2016 WL 5400892 (Tex. Crim. App. Sept. 21, 2016). However, a "conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *Green v. Johnson*, 116 F.3d 1115, 1122 (5th Cir. 1997) (quoting *Garland v. Maggio*, 717 F.2d 199, 206 (5th Cir. 1983)). "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable[.]" *Strickland*, 466 U.S. at 690.

Harvin argues that his attorney failed to prepare a proper defense because he did not interview the people named on the list of witnesses provided by Harvin. ECF Nos. 1 at 21 and 41 at 29–30. Specifically, Harvin argues that "there were willing and credible witnesses who would have testified to [his] and his children's relationship at the time" and that there were only two witnesses who gave written reports—"Don and Devora Gonce, the preacher and his wife who had personally witnessed the recant at church and testified at the grand jury." ECF No. 1 at 60. The record is clear that Harvin's attorney did not call any witnesses in the revocation proceedings. ECF

No. 22-20 at 127–130. However, the Fifth Circuit "has emphasized that 'complaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative.'" *United States v. Cockrell*, 720 F.2d 1423, 1427 (5th Cir. 1983) (quoting *Buckelew v. United States*, 575 F.2d 515, 521 (5th Cir. 1978)). Moreover, a petitioner making a claim of "ineffective assistance based on counsel's failure to call a witness [is required] to demonstrate prejudice by 'nam[ing] the witness, demonstrat[ing] that the witness was available to testify and would have done so, set[ting] out the content of the witness's proposed testimony, and show[ing] that the testimony would have been favorable to a particular defense.'" *Woodfox v. Cain*, 609 F.3d 774, 808 (5th Cir. 2010) (quoting *Day v. Quaterman*, 566 F.3d 527, 538 (5th Cir. 2009)). Harvin has not provided affidavits from the potential witnesses nor any assurance that they would have appeared at trial had counsel interviewed them. *Cockrell*, 720 F.2d at 1427 (finding that complaints of uncalled witnesses are not favored and an affidavit from the witness is necessary to demonstrate what the witness would have testified at trial). Rather, Harvin merely speculates as to what testimony he believes those witnesses would have given. *See* ECF No. 4 at 66. His allegation that his counsel failed to interview and call a witness, without more, is insufficient to warrant habeas relief.

Harvin argues further that his attorney failed to obtain records from Child Protective Services ("CPS") to help his case. *Id.* However, the TCCA found that at sentencing, "the defense exhibit consist[ed] of documents that were generated prior to [Harvin]'s plea of nolo contendere to the original sexual assault case: the Sheriff's report of investigation, the letter [District Attorney Tim] Cole sent to Barbara, [Harvin's wife at the time], and the 1994 CPS report." *Ex parte Harvin*,

No. WR-72,328-03, 2016 WL 5400892 (Tex. Crim. App. Sept. 21, 2016). Similar to Harvin's claims 10 and 11, he has not shown by clear and convincing evidence that his attorney's failure to call witnesses or present additional evidence at the punishment proceeding prejudiced his case. Harvin has the burden of rebutting the presumption of correctness afforded to a state court's factual findings, and he has failed to do so here. *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000).

Harvin summarily argues that his attorney failed to raise a proper defense. But he does not state what the proper defense should have been. While the Court must construe a *pro se* habeas petition liberally, conclusory allegations are insufficient to raise cognizable claims of ineffective assistance of counsel. *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000) (citing *Estelle*, 694 F.2d at 1012); *see also United States v. Daniels*, 12 F. Supp. 2d 568, 575 (N.D. Tex. 1998) (holding that conclusory allegations cannot serve as basis for a claim of ineffective assistance of counsel in a habeas proceeding). Accordingly, Harvin's ineffective assistance of counsel claim based on his attorney's failure to investigate and call witnesses is without merit. Because Harvin has not overcome his burden of establishing how his attorney's strategy was so flawed that it prejudiced his case, the undersigned recommends that Harvin's remaining claims of ineffective assistance of trial counsel be denied.

### Ineffective Assistance of Counsel on Appeal Claim 17

Harvin claims that he was denied effective assistance of counsel on appeal because his lawyer "did nothing but attack the underlying plea of nolo contendere" and failed to present other, possibly meritorious grounds. ECF Nos. 1 and 41 at 33.

In a claim of ineffective assistance of counsel on appeal, a petitioner must demonstrate both that "counsel's errors were so serious that counsel was not functioning as the counsel

guaranteed to the defendant by the sixth amendment" and "that the particular lapse was prejudicial, meaning that there is a reasonable probability that but for the error the ultimate result would have been different." *McCrae v. Blackburn*, 793 F.2d 684, 688 (5th Cir. 1986). A reasonable probability is one sufficient to undermine confidence in the outcome of the appeal. *Sharp v. Puckett*, 930 F.2d 450, 453 (5th Cir. 1991). The Constitution does not require appellate counsel to raise every nonfrivolous ground that might be asserted on appeal. *Jones v. Barnes*, 463 U.S. 745, 751 (1983). "Instead, to be deficient, the decision not to raise an issue must fall 'below an objective standard of reasonableness.'" *United States v. Phillips*, 210 F.3d 345, 348 (5th Cir. 2000) (quoting *Strickland*, 466 U.S. at 688). "[A] reasonable attorney has an obligation to research relevant facts and law, or make an informed decision that certain avenues will not prove fruitful. Solid, meritorious arguments based on directly controlling precedent should be discovered and brought to the court's attention." *United States v. Williamson*, 183 F.3d 458, 463 (5th Cir. 1999). To determine whether appellate counsel was deficient, the Court thus must consider whether the omitted challenge "would have been sufficiently meritorious such that [the attorney] should have raised it on appeal." *Phillips*, 210 F.3d at 348.

Harvin states that his counsel failed to "raise any arguable issues" and thus denied him the "direct appeal process." ECF No. 41 at 33–34. The TCCA held that Harvin did not raise or even suggest what claims his counsel could have raised on appeal. *Ex parte Harvin*, No. WR-72,328-03, 2016 WL 5400892 (Tex. Crim. App. Sept. 21, 2016). Harvin claims that appellate counsel was ineffective for failing to raise "meritorious issues on direct appeal." ECF No. 41 at 33. He does not offer any argument that demonstrates a reasonable probability that, had counsel raised these issues on appeal, the result on appeal would have been different. Because these claims are

conclusory in nature, they fail to state a ground upon which habeas relief may be granted. *Estelle*, 694 F.2d at 1012. Harvin has failed to demonstrate that his counsel's performance on appeal was objectively unreasonable or that it resulted in prejudice. Therefore, habeas relief on this ground should be denied.

## **Request for Evidentiary Hearing**

Furthermore, Harvin argues that while the TCCA remanded his case for more fact-finding, there has never been an evidentiary hearing held regarding his current habeas claims. ECF No. 41 at 3. Specifically, Harvin argues that Walsh's failure to move to disqualify McGaughey in the revocation proceedings requires an evidentiary hearing to determine whether a conflict of interest existed between McGaughey and Harvin. ECF No. 41 at 16. The undersigned construes Harvin's pleadings as a request for the Court to remand his case for an evidentiary hearing regarding his ineffective assistance of trial counsel claims.

Under applicable law, an evidentiary hearing is precluded unless: (1) a petitioner's claims rely on a new rule of constitutional law or a factual predicate previously undiscoverable through the exercise of due diligence; and (2) the petitioner establishes by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found him guilty. 28 U.S.C. § 2254(e)(2). There "must be a viable constitutional claim, not a meritless one, and not simply a search for evidence that is supplemental to evidence already presented." *Ayestas v. Stephens*, 817 F.3d 888, 896 (5th Cir. 2016). The decision to grant an evidentiary hearing "rests in the discretion of the district court." *Schriro v. Landrigan*, 550 U.S. 465, 468 (2007); *see also McDonald v. Johnson*, 139 F.3d 1056, 1060 (5th Cir. 1998) ("The district court had sufficient facts before it to

make an informed decision on the merits . . . and, accordingly, did not abuse its discretion in refusing to hold an evidentiary hearing.").

Here, the TCCA remanded Harvin's habeas application to the state trial court twice for further findings of fact. *Ex parte Harvin*, No. WR-72,328-03, 2016 WL 5400892 (Tex. Crim. App. Sept. 21, 2016). The TCCA presented its findings of fact in three separate sets: (1) findings based on the TCCA's initial review of Harvin's application; (2) findings based on the first remand to the state trial court; and (3) findings based on the second remand to the state trial court. *Id.* As noted in the TCCA dissenting opinion by Judge Meyers, the court also "assum[ed] the role as the ultimate fact finder in the case" as to certain claims raised by Harvin. *Id.* After two separate remands, the TCCA adopted the findings of fact of the state trial court in conjunction with the entire record of the case to conclude that Harvin's claims did not rise to the level of a constitutional violation. Harvin does not meet either of the exceptions to warrant an evidentiary hearing under 28 U.S.C. § 2254(e)(2) in light of the undersigned's findings that his remaining grounds for habeas relief should be denied.

## Cumulative Effect

Finally, while Harvin does not directly argue that the cumulative effect of all of the above alleged errors in his case warrant habeas relief, he does so indirectly. The undersigned therefore addresses whether the "cumulative error doctrine" would apply in this case. The Fifth Circuit has recognized the "cumulative error doctrine," which provides that "an aggregation of non-reversible errors (i.e. plain errors failing to necessitate reversal and harmless errors) can yield a denial of the constitutional right to a fair trial." *United States v. Williams*, 264 F.3d 561, 572 (5th Cir. 2001) (citing *United States v. Munoz*, 150 F.3d 401, 418 (5th Cir. 1998)). "[F]ederal habeas corpus relief

23

may only be granted for cumulative errors in the conduct of a state trial where (1) the individual errors involved matters of constitutional dimension rather than mere violations of state law; (2) the errors were not procedurally defaulted for habeas purposes; and (3) the errors 'so infected the entire trial that the resulting conviction violates due process.'" *Turner v. Quarterman*, 481 F.3d 292, 301 (5th Cir. 2007) (quoting *Derden v. McNeel*, 978 F.2d 1453, 1454 (5th Cir. 1992)). To determine whether cumulative error has been shown, this Court "review[s] the record as a whole to determine whether the errors more likely than not caused a suspect verdict." *Derden*, 978 F.2d at 1458.

Harvin has failed to establish error in any of his ineffective assistance of counsel claims individually. Therefore, relief is not available under the cumulative error doctrine. *See Miller v. Johnson*, 200 F.3d 274, 286 (5th Cir. 2000) (finding that a petitioner who failed to demonstrate any error by trial counsel could not establish cumulative error); *Beall v. Cockrell*, 174 F. Supp. 2d 512, 524 (N.D. Tex. 2001) (federal habeas relief unwarranted when petitioner failed to demonstrate any error in his state trial). Because none of the alleged errors identified by Harvin do not rise to the level of constitutional deficiency to render his trial fundamentally unfair, the cumulative error doctrine does not apply in this case.

## Conclusion

Harvin has failed to show that the state court's decision was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States, or that the decision was based on an unreasonable determination of the facts in light of the evidence presented.  The state court's findings of fact and credibility determinations are entitled to a presumption of correctness, and Harvin has failed to rebut this presumption.

Because Petitioner has not shown that he is entitled to habeas relief, the undersigned **RECOMMENDS** that the remaining claims (6–12 and 17) of the Petition for Writ of Habeas Corpus (ECF No. 1) be **DENIED**.

A copy of this Findings, Conclusions, and Recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this Findings, Conclusions, and Recommendation must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b)(1). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's Findings, Conclusions, and Recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

Signed March 1, 2018.

Hal R. Ray, Jr.
UNITED STATES MAGISTRATE JUDGE